NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Richard SZELC, | : | |
| Plaintiff, | : | Civ. No. 08-4782 |
| v. | : | OPINION & ORDER |
| David STANGER, et al., | : | |
| Defendants | : | |
| Gabor GOTTESMAN, | : | |
| Third Party Plaintiff, | : | |
| v. | : | |
| FIRST AMERICAN TITLE INSURANCE CO., | : | |
| Third Party Defendant | : | |

THOMPSON, U.S.D.J.,

## INTRODUCTION

This matter comes before the Court upon Third-Party Defendant First American Title Insurance Co.'s ("First American") Motion for Summary Judgment [63] and Defendant/Third-Party Plaintiff Gabor Gottesman's Cross-Motion for Partial Summary Judgment [68]. The motions have been decided upon the papers without oral argument. For the reasons explained below, First American's Motion is DENIED and Gottesman's Cross-Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

1

This dispute arises between Gottesman, a defendant in the above-captioned action, and First American, a third-party defendant that allegedly owes Gottesman a duty to defend. The plaintiff in this lawsuit has sued several individuals and organizations—including Gottesman—alleging fraud, conspiracy, racketeering, and other unlawful acts related to "a sham sale-leaseback scheme designed to strip equity from the Plaintiff's home." (Compl. Prelim. Statement.) In late February or early March in 2008, Gottesman acquired title to the property in question—21 Julia Drive, Manahawkin, Ocean County, New Jersey (the "Property")—and shortly thereafter he took out title insurance on the property. (First American's Br. in Supp. of Summ. J., Ex. E, "Residential Title Insurance Policy" [hereinafter "Policy"].) The policy, for which First American is the insurer,[1] insures Gottesman against losses based on title risks and entitles him to legal defense of his title to the Property in court. (Id.) There are several exceptions and exclusions to the policy, the most important of which in this dispute is exclusion # 3, an exclusion for title risks "that are created, allowed, or agreed to by [the insured]" or "that are known to [the insured], but not to us, on the Policy Date." (Id.) Plaintiff alleges that Gottesman was a participant in the fraudulent conspiracy that deprived him of title to his home. (See, e.g., Compl. ¶ 110.) Based on these allegations, First American contends that Gottesman's title risks with respect to the Property were either created by Gottesman or at least known to Gottesman, and that as a result First American has no duty to defend Gottesman against Plaintiff's claims.

First American has now moved for summary judgment, alleging that it is clear as a matter of law that it does not owe Gottesman any duty to defend. Gottesman cross moved for summary judgment, seeking an order that First American is required to defend Gottesman from Plaintiff's claims.

---

[1] Gottesman originally took out the policy with a different company, but First American has taken over the policy.

ANALYSIS

I. Standard of Review

Summary Judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986).

In the context of a dispute over whether an insurance company owes the insured a duty to defend, summary judgment is often available because "[w]hether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992). Since the duty to defend arises out of the substance of the complaint rather than the factual disposition of the claims, a court can frequently make a determination of coverage without resort to a trial.

II. First American's Duty to Defend

This case is ultimately about the interpretation of an insurance contract. An insurance policy whose terms are clear will be enforced as written, but when the meaning of an insurance policy is ambiguous, the ambiguity is construed in favor of the insured and against the insurer. Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 103 (App. Div. 1998). Consequentially, courts interpret coverage provisions of policies broadly, and they strictly construe exclusion clauses against insurers. Id.

The dispute between the parties is, in essence, quite narrow.  Both parties agree that the question over whether a duty to defend exists is determined by looking at the claims stated in the Complaint, not by anticipating the results of a trial.  The parties also agree that the Plaintiff's claims in this case revolve around the question of whether the Plaintiff's name was forged to a particular deed.  Finally, it is not disputed that the Plaintiff alleges that Gottesman was a co-conspirator and hence complicit in the forgery scheme.  It is consequentially beyond dispute that the insurance contract does *not* cover those claims that allege knowing wrongdoing on the part of Gottesman.  Claims involving knowing wrongdoing would necessarily be "created, allowed, or agreed to by [Gottesman]," and hence subject to exclusion # 3.

However, some of the claims do not necessarily implicate Gottesman as a knowing or responsible individual.  For example, Count III alleges that other defendants in this case violated the federal Truth in Lending Act ("TILA") and seeks to void Gottesman's title to the Property even though Gottesman himself is not alleged to have violated TILA.  Therefore it is at least possible that the evidence produced at trial will show that Gottesman had no knowledge of the scheme or responsibility for the scheme, but that his title is nonetheless at risk.  This Court must determine whether First American owes a duty to defend Gottesman against those claims raised in the Complaint that do not necessarily implicate Gottesman's knowledge of or participation in the alleged forgery scheme.

New Jersey law is not entirely consistent on the issue of how to treat the duty to defend in the case of an insured whose entitlement to coverage is factually uncertain.  It is established that if it is clear from the face of the complaint that an insurer will be liable to indemnify any judgment for the Plaintiff, then the insured has a duty to defend.  <u>Danek v. Hommer</u>, 28 N.J. Super. 68, 77 (App. Div. 1953).  Courts have generally phrased the rule more broadly than this,

stating that "[w]hen multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated." Voorhees, 128 N.J. at 174; see also L.C.S., Inc. v. Lexington Ins. Co., 371 N.J. Super. 482, 497 (App. Div. 2004) ("[I]f a claim is stated in two conflicting theories in a complaint for damages, one which requires coverage and the other which does not, the carrier must defend and may do so under reservation of rights."). But there is at least one recognized exception to this rule. If the nature of the underlying lawsuit is such that a trial on the merits will not resolve disputes over coverage, then coverage does not turn on whether the c*omplaint's allegations* suggest that the insured is covered; instead, a collateral proceeding is necessary to determine if the *actual facts* warrant coverage. Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 24 (1984); Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 389-90 (1970). Further complicating matters, one recent Appellate Division decision holds that the general rule enunciated in Voorhees is only dicta. New Jersey Mfrs.' Ins. Co. v. Vizcaino, 392 N.J. Super. 366, 370-376 (App. Div. 2007). That panel interpreted Burd and Hartford to mean that whenever an insured faces both potentially covered and uncovered claims, the insurer's duty is only to reimburse the insured's defense costs if the facts turn out to show that the insured was entitled to coverage. Id.

After carefully considering these cases, this Court concludes that it should not follow Vizcaino.[2] In general, the purpose of the insurance contract is promoted by requiring the insurer to provide a defense as to claims where coverage is disputed.

> To hold otherwise would be to place upon the insured the burden of demonstrating in advance of the underlying litigation which of the competing theories of recovery against it was applicable for purposes of insurance, thereby frustrating one of the basic purposes of such a clause in an insurance contract— protection of the insured from the expenses of litigation.

---

[2] This Court is only bound to accept the interpretation of the state's highest court as authoritative. Connecticut Mut. Life Ins. Co. v. Wyman, 718 F.2d 63, 65 (3d Cir. 1983). Vizcaino is at odds with L.C.S. on the very point at issue in this case, so it is far from clear that the New Jersey Supreme Court would endorse Vizcaino in its entirety.

Voorhees, 128 N.J. at 174 (quoting Solo Cup Co. v. Fed. Ins. Co., F2d 1178, 1185 (7th Cir. 1980)); see also Danek v. Hommer, 28 N.J. Super. 68, 78 (App. Div. 1953) (quoting Lee v. Aetna Cas. & Sur. Co., 178 F.2d 750 (2d Cir. 1949) (reasoning that parties to an insurance contract would not have agreed to an arrangement whereby, in the event of a dispute over coverage, the insured would bear the cost of a defense to which he might very well be entitled)). Especially when considered in light of the principle that ambiguous insurance contracts are construed in favor of the insured, the better interpretation of the case law is that—absent express language to the contrary—insurance companies must defend any claim which could feasibly fall within the coverage provided under the policy. In sum, this Court concludes that when an insured defendant's entitlement to an insurer-provided defense turns on factual issues that will be decided at the trial of the underlying lawsuit, the insurer must provide a defense. The insurance company may, of course, make a reservation of rights so that it does not waive its ability to contest indemnification. See L.C.S., 371 N.J. Super. at 497.

  With that rule in mind, it is clear that First American owes Gottesman a duty to defend. While Plaintiff's allegations clearly describe a situation in which Gottesman was complicit in wrongdoing, and hence ineligible for coverage, it is at least plausible that the facts at trial could show that Gottesman is entitled to compensation as to the title risks created by other parties' unlawful acts. Since the duty to defend exists whenever there is a possibility that the insurer will be liable to compensate for the underlying claims, and First American may turn out to be liable on those claims that do not allege Gottesman's knowledge of or participation in the forgery scheme, First American owes Gottesman a duty to defend those claims which do not depend upon Gottesman's knowledge or participation.

This requires the Court to undertake the further determination of what precisely is meant by "knowledge or participation," or—in the language of the contract—"Title Risks . . . that are created, allowed, or agreed to by you [or] that are known to you, but not to us, on the Policy Date." (Policy.)  In the context of an insurance contract, "the word 'create' connotes 'the idea of knowledge, the performance of some affirmative act by the insured, a conscious or deliberate causation.'"  Keown v. W. Jersey Title and Guar. Co., 161 N.J. Super. 19, 25 (App. Div. 1978) (quoting Feldman v. Urban Commercial, Inc., 87 N.J. Super. 520, 532 (App. Div. 1965)). Negligence on the part of the insured will not trigger a "created-or-known" exclusion. Id. at 26-27.  It appears, then, that the only risks excluded are those that arise from an event or condition which the insured deliberately caused or of which he was consciously aware.  Based on that understanding of the contract, this Court determines that the facts at trial might prove that Gottesman's policy covers the title risks created by Counts III, IV, V, IX, and/or X of the Complaint.[3]  The first four of these counts do not allege or depend on any participation in the scheme by Gottesman.  While Count X—"Unconscionability"—does allege wrongdoing by Gottesman, a claim of unconscionability does not require such proof, so it is plausible that Gottesman may be entitled to coverage on this count.

At this time, the Court will not determine precisely what First American must do to satisfy its duty to defend.  Gottesman is only entitled to a defense of those specific counts named above; First American owes no duty to defend Gottesman on the other claims.  Therefore, the parties will have to work out how First American can appropriately provide this "partial" defense. The record, as it currently exists, is not sufficiently developed to justify the entry of an

---

[3] There is no coverage for the risks created by Counts I, II, VI, VII, VIII, and XIII because those claims depend on proof of Gottesman's participation in the forgery scheme.  There is no coverage on Counts XI, XII, XIV, and XV because the relief demanded in those counts does not affect Gottesman's title to the Property.

order specifically apportioning defense costs between the parties.[4]  The Court can only enter declaratory relief to the effect described above, leaving the details to be resolved by agreement between the parties—or by further motion to this Court if such agreement proves elusive.

## CONCLUSION

In light of the foregoing reasons, it is ORDERED, on this 30th day of November 2009, that Third-Party Defendant First American Title Insurance Co.'s Motion for Summary Judgment [63] is DENIED; and

It is further ORDERED that Defendant/Third-Party Plaintiff Gabor Gottesman's Cross-Motion for Partial Summary Judgment [68] is GRANTED IN PART; and

It is further ORDERED that Gottesman is awarded declaratory relief as follows:  First American Title Co. is obligated to provide for Gottesman's defense against Counts III, IV, V, IX, and X of the Complaint, although it may do so under a reservation of rights; and

It is further ORDERED that all additional relief requested by Gottesman is DENIED without prejudice.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.

---

[4] A few New Jersey cases discuss the apportionment of costs between covered and non-covered claims, but this Court expresses no opinion as to their applicability to the instant case.  See, e.g., SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 214-16 (1992).