IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

RICHARD SZELC,

       Plaintiff,

   v.

DAVID STANGER, et al.,

       Defendants, Third Party Plaintiff,

   v.

TERESA SZELC,

       Third Party Defendant,
and

GABOR GOTTESMAN,

       Third Party Plaintiff,

   v.

FIRST AMERICAN TITLE INSURANCE
CO.,

       Third Party Defendant.

Civil No.: 08-4782 (AET)

---

## FIRST AMERICAN TITLE INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Rubin, Ehrlich & Buckley, P.C.
731 Alexander Road, Suite 100
Princeton, New Jersey 08540
(609) 452-7300
Attorneys for the Third Party Defendant,
First American Title Insurance Company

By:   Robert L. Grundlock, Jr.
      (5205)

## I.  TABLE OF CONTENTS

II.    Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

III.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

     A.    Introduction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

     B.    Szelc's allegations of Gottesman conduct. . . . . . . . . . . . . . . . . .   2

     C.    Gottesman's Title Policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5


IV.    Law & Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

     A.    The allegations in Szelc's complaint.  . . . . . . . . . . . . . . . . . . . . .   7

     B.    Szelc alleges that Gottesman acted intentionally and knowingly in Counts III, IV, V, IX, and X. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

     C.    Szelc specifically alleges that Gottesman acted deliberately in Count X: Unconscionability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

     D.    First American's liability is limited to Gottesman's Title Policy   . . . . . . .   12


V.    Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

## II.  TABLE OF AUTHORITIES

Statutes Cited

N.J.S.A. 17:46B-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Cases Cited

Danek v. Hommer, 28 *N.J. Super.* 68, 76-8 (App. Div. 1953)  . . . . . . . . . . . . . . . .   7, 11

Gerrold v. Penn Title Ins. Co. 271 *N.J. Super.* 50, 53 (App. Div. 1994)   . . . . . . . .   12, 13

Keown v. West Jersey Title and Guaranty Co., 161 *N.J. Super.* 19, 25-26 (App. Div. 1978)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 11


Title Ins. Corp. Of Pennsylvania v. Wagner 179 *N.J. Super.* 234, 240 (Ch. Div. 1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

<u>Walker Rogge, Inc. v. Chelsea Title</u>, 116 *N.J.* 517, 535 (1989)  . . . . . . . . . . . . . . . . 12

### III. TABLE OF EXHIBITS

A. -    Second Amended Complaint

B. -    Deed from Szelc to Parkstone

C. -    G. Gottesman Deposition Transcript

D. -    Third Party Complaint

E. -    Gottesman's Title Policy

F. -    Navesink Capital Decision

G. -    Court's Order & Decision - Coverage

H. -    Gottesman's Affidavit of Consideration

I. -    Statement of Borrower

J. -    First American Denial Letters

K. -    Gottesman Demand Letter

L. -    Gottesman's Note & Mortgage - First Meridian Loan

M. -    Gottesman's First Meridian Loan Application

## III. STATEMENT OF FACTS

A.    Introduction.

This motion for reconsideration seeks to resolve a contradiction in the Opinion &

Order (Exhibit G) entered in this case by the Court on December 3, 2009, and to correct

the Court's determination of coverage.  First American Title Insurance Company ("First

American") makes this motion based upon the limitations of the title insurance policy

(Exhibit E) held by the defendant, Gabor Gottesman ("Gottesman"), and the applicable

law.  He filed a claim (Exhibit K) with seeking a defense and indemnity under his title

insurance policy to cover claims of the plainitff ("Szelc").  First American disclaimed

coverage (Exhibit J).   The Court denied First American's motion for summary judgment,

and granted in part Gottesman's cross-motion for partial summary judgment.

The Court made a number of specific findings.  Essentially, the Court determined

that First American had an obligation to provide Gottesman with a defense on the

following counts (the "Covered Claims"):

|  |  |
| --- | --- |
| Count III.: | Equitable Mortgage and TILA violation; |
| Count IV.: | Home Ownership and Equity Protection Act; |
| Count V.: | Breach of Fiduciary Duty; |
| Count IX.: | Unjust Enrichment; |
| Count X.: | Unconscionability |

The Court made this determination with the proviso that First American may defend

under the reservation of rights to protect its claim for indemnification against the

insured.[1]  The Court ruled out coverage for Counts I, II, VI, VIII & XIII on the basis that

---

[1] Although seeking reconsideration, First American has complied with the Court's
directive by retaining counsel, Mr. Peter Boyer, to defend Gottesman's fee interest on

(continued...)

1

"those claims require proof of Gottesman's participation in the forgery scheme." Decision, p.7, Exhibit G.  The Court further ruled out coverage on Counts XI, XII, XIV and XV on the basis that those Counts do not affect Gottesman's interest in the Property. Id.  First American seeks reconsideration as to the Covered Claims determination.

B.     Szelc's allegations of Gottesman's conduct.

Szelc alleges that Gottesman knowingly conspired with the other named defendants to fraudulently obtain title to the real estate located at 21 Julia Drive, Manahawkin, New Jersey (the "Property").  See Szelc's Second Amended Complaint, Exhibit A.  On or about January 29, 2008, the Property was sold at a Sheriff's sale for the sum  of $254,000.00.  See Id. at ¶ 31, Exhibit A.  The Sheriff's sale was subject to a 10 day redemption period. Id.  During the redemption period, the defendant David Stanger ("Stanger"), Gottesman's business partner, and Gottesman decided to purchase the Property. Id. at ¶¶ 32,33 and 34.  Szelc's wife allegedly forged his signature in order to make this sale happen.

Prior to Szelc's conveyance of the Property, Stanger requested that Gottesman acquire the Property directly.   See G. Gottesman Tr. 76, l. 17 - Tr. 77, l. 22, Exhibit C. Gottesman, realizing that he might be able to purchase the Property for half of what he deemed the market value, purchased the Property, but did so through the defendant

---

[1](...continued)
all Covered Claims.  That defense necessarily entails Gottesman filing crossclaims against his co-defendants, with whom he has been jointly represented, in order to preserve Gottesman's rights to indemnification and contribution in the event that he suffers a loss caused by the acts of his co-defendants.

2

Parkstone Acquisition, LLC ("Parkstone").[2]  See Id. at Tr. 21, l. 23 - Tr. 22, l. 7 & Tr. 43, ll. 6 - 22, Exhibit C.  Gottesman maintains that Stanger arranged to finance this purchase through Gottesman's son-in-law, Jonathan Reichemberg, who worked as a mortgage broker for First Meridian Mortgage.  See G. Gottesman Tr.83, ll.19-23 ("It's Mr. Stanger who does all the transactions.").  See also Gottesman Loan Application, Exhibit M.  Stanger and Reichemberg arranged Gottesman's financing for the purchase of  the Property from Szelc.

Gottesman does not draw a distinction between his conduct and Parkstone's actions.  He testified that, "[F]irst I paid for [the Property] from my own pocket and then refinanced it, and then I got my money back." Id. at Tr. 43, ll. 6-8, Exhibit C.  Gottesman was refinancing the Property that he had purchased in the name of Parkstone in order to get his money out of it, and make a profit.  See Id. at Tr. 16, l. 10 - Tr. 17, l. 18, Exhibit C.  It is a mere legal fiction that the Property was first conveyed to Parkstone .

Stanger owns 50% of Parkstone.  Id. at Tr. 19, l. 15 - Tr. 20, l. 15.  Gottesman owns the other 50%.  Id.  Parkstone was simply a straw purchaser.  Gottesman funneled the initial purchase money through it, and then within a month, refinanced it for a profit.  See Id. at Tr. 44, ll. 2- 8, Exhibit C.  See also  Szelc's Second Amended Complaint ¶ 78, Exhibit A.  The affidavit of consideration (Exhibit H) signed by Gottesman identifies the consideration paid to Parkstone as $1.

Now, however, Gottesman will press claims against Stanger and Parkstone for indemnification on the hypothesis that he could suffer a covered loss caused by their

---

[2] According to Gottesman, the Property was valued at over $500,000.00.  See G. Gottesman Tr. 88, l. 18 - Tr. 89, l.3. He acquired it for $260,497.65.  See Id. at Tr. 43, l. 9 - Tr. 44, l. 8, Exhibit C.

3

conduct of which he had no knowledge, and in which he did not participate.  Gottesman has not pursued such claims previously, as it makes no sense to do so under the facts of the case, particularly (but not exclusively) as alleged in the complaint.  It is only the hypothetical possibility of such a loss, not the result of any allegation or fact of record, which could create such a claim.  Gottesman is Parkstone for all practical purposes, and he acted in concert with Stanger in this and other similar deals as demonstrated in discovery.  See G. Gottesman Tr. 44, ll.6 -16.  The notion that the co-defendants, Stanger and Parkstone, acted separately from Gottesman or without his knowledge is a notion that does not agree with either the alleged or established facts of this case.  To the contrary, the actions of Parkstone would be imputed to Gottesman, and he either participated in, or permitted, the conduct of Stanger in all respects.

Gottesman admittedly views himself and Parkstone as one and the same. See Id. at Tr. 12, l. 24 - Tr. 31, l. 22.  See also Statement of Borrower's Benefits, Exhibit I.  In the Statement of Borrower's Benefits, Gottesman confirms that he was refinancing his existing mortgage on the Property, describing it as his property.  Gottesman executed this document on February 14, 2008, fourteen days before the Property was conveyed to him.  Id. See also Szelc's Second Amended complaint ¶78, Exhibit A.

Currently, the Property is in Gottesman name, but  Parkstone pays the short fall ($800 - $900) between the monthly rental income and the monthly mortgage payment. See G. Gottesman Tr. 31, ll. 1-22.  This fact, in turn, reflects the tight relationship between Gottesman and Stanger.  It is Stanger who finds the money every month to make up for the short fall.

In summary, Gottesman thought that he could purchase the Property on the

4

cheap, and then once Szelc was paying rent, he could refinance it draining the equity from the Property to make a profit.  See Id. at Tr.43, I.9 - Tr.44, I.8, Exhibit C.  As a result of the coverage determination as it stands, Gottesman will now seek indemnification from Stanger and Parkstone for this conduct on the notion that he could suffer the loss of his fee interest due to their conduct, although he has testified that it was his conduct, as the Complaint alleges.

C.    Gottesman's Title Policy.

Gottesman seeks coverage for his alleged intentional conduct.  However, a policy of title insurance expressly excludes coverage for such conduct.  Moreover, title insurance does not cover Gottesman for the consequences of his own conduct, whether he acted alone or in concert, actively or passively, with Parkstone or any other co-defendant.  Gottesman cannot obtain coverage for what he did or permitted others to do, as the Court has recognized.

In the Opinion and Order, this Court succinctly set forth the legal issues and some of the undisputed material facts placed before it by First American and Gottesman.

> The dispute between the parties is, in essence, quite narrow. Both parties agree that the question over whether a duty to defend exists is determined by looking at the claims stated in the Complaint, not by anticipating the results of a trial. The parties also agree that the Plaintiff's claims in this case revolve around the question of whether the Plaintiff's name was forged to a particular deed.  Finally, it is not disputed that the Plaintiff alleges that Gottesman was a co-conspirator and hence complicit in the forgery scheme.  It is consequentially beyond dispute that the insurance contract does *not* cover those claims that allege knowing wrongdoing on the part of Gottesman. Opinion & Order, p. 4, Exhibit G, (emphasis added).

Despite the harmonious understanding of the law and the allegations in Szelc's

Complaint, this Court departed from the four corners of the Complaint, and ventured to hypothesize what might be proven at trial:

> While Plaintiff's allegations clearly describe a situation in which Gottesman was complicit in the wrongdoing, and hence ineligible for coverage, it is at least plausible that the facts at trial could show that Gottesman is entitled to compensation as to the title risks created by other parties' unlawful acts. Opinion & Order, p. 6, Exhibit G, (emphasis added).
>
> *        *        *
>
> [T]his Court determines that the facts at trial might prove that Gottesman's policy covers the title risks created by Counts III, IV, IX and/or X of the Complaint. Id. at 7 (emphasis added).

A determination as to coverage must be based on the allegations of the complaint at issue, as those are the allegations to be tried. Departing from the four corners of a complaint may create a scenario leading to plausible coverage, but that coverage necessarily covers different types of claims.

For the reasons stated above, this case does not involve a scenario in which Gottesman would suffer a loss, particularly one to his fee interest, caused by his co-defendants without his knowledge or involvement. He has joined in their defense of Szelc's allegations. No crossclaims have been previously filed by Gottesman.[3]  No allegations that he acted alone or without knowledge  have been made by anyone.  By finding coverage for the Covered Claims, the Court has created claims beyond the contemplation of any party, and well beyond those asserted by Szelc.

---

[3] Gottesman has filed a crossclaim against Madison Title, but that has nothing to do with the Covered Claims issue.

## IV.  LAW & ARGUMENT

A.      The allegations in  Szelc's Complaint control.

As this Court and the parties agree "it is the allegation in the complaint of a cause

of action which, if sustained, will impose a liability covered by the policy." Danek v.

Hommer, 28 *N.J. Super.* 68, 76-8 (App. Div. 1953). That a complaint's allegations, and

not the ultimate disposition of claims, are what trigger coverage was affirmed by the

court in Keown v. West Jersey Title and Guaranty Co., 161 *N.J. Super.* 19, 25-26 (App.

Div. 1978); See Title Ins. Corp. of Pennsylvania v. Wagner 179 *N.J. Super.* 234, 240

(Ch. Div. 1981) (If the claim rests upon an assertion that is clearly within the language of

the exclusion, then the title insurer does not owe the insured a duty under the title

policy.).  The obligation of an insurer to defend is dependent upon the allegations of the

complaint which is the bases for the claim. Id.  See also Navesink Capital Partners, LLC.

V. First American Title Insurance Co., Mon-L-1301-08, final decision (June 22, 2009) (L.

Div. Monmouth County, N.J.) (Waldman, J.S.C.) (Holding that an insured who knowingly

participated in a fraudulent scheme was not entitled to coverage under his title policy),

Exhibit F.

B.      Szelc alleges that Gottesman acted intentionally and knowingly in Counts III, IV,
        V, IX, and X.

The Court attempts to reconcile the clear conflict between the agreed upon

controlling case law, and the jump to what a "trial might prove" by defining the "created-

or-known" exclusion or, more precisely, limiting what falls under the "created-or-known"

exclusion.  "Negligence on the part of the insured will not trigger a 'created-or-known'

exclusion." Opinion & Order, p. 7, Exhibit A, (quoting Keown v. West Jersey Title and

7

Guaranty Co., 161 *N.J. Super.* 19, 25-26 (App. Div. 1978).  The problem with this

becomes evident when one examines Szelc's Complaint, and the response thereto.

      Szelc, at no time, avers any cause of action attacking any defendant based on

negligence.  Indeed, the complaint necessarily hinges on forgery, and the intentional, not

to say criminal, conduct related to it.[4]  Gottesman's alleged conduct, which forms Szelc's

basis to attack Gottesman's title, was direct, purposeful, and intentional.  As the Court

has recognized: "the Plaintiff in this lawsuit has sued several individuals and

organizations - including Gotttesma– alleging fraud, conspiracy, racketeering, and other

unlawful acts related to 'a sham sale-leaseback scheme designed to strip equity from

the Plaintiff's home.'"  Opinion & Order, p. 2, Exhibit G.  Negligence cannot play a role

here, as it would deprive Szelc of the relief he seeks.  Szelc understands this.  This case

is on its Second Amended Compliant, and discovery ends in 2009.

      The foundation of Szelc's Complaint is set forth in paragraphs 1 - 83.  The Counts

read separately, without inclusion paragraphs 1 - 83, do not state a cause of action.

See Exhibit A.   Szelc's theory of conspiracy, unlawful actions, fraud and deceit among

all defendants, including Gottesman is set forth in Counts I & II - paragraphs 84 - 107.

See ¶¶ 84 - 107, Exhibit A. Inclusion of paragraphs 1 - 107 (including Counts I & II) is

fundamental to Szelc's theory as acknowledged in this Courts' Opinion & Order.  "The

parties also agree that the Plaintiff's claims in this case revolve around the question of

whether the Plaintiff's name was forged to a particular deed. Finally, it is not disputed

---

[4]  Szelc's wife has pled the 5th Amendment to deposition questions, and
Gottesman has joined the other defendants in suing her.  Noticeably, Gottesman has
not asserted that the other defendants, but not him, knew of the forgery.  His position
on this key dispositive issue cannot be distinguished from the other defendants.

that the Plaintiff alleges that Gottesman was a co-conspirator, and hence complicit in the forgery scheme."  Opinion & Order, p. 4, Exhibit G.

The Court held that Counts III, IV, V, IX and/or X of the Complaint are covered risks because the facts at trial might prove that Gottesman's fee interest in the Property could be adversely affected by the conduct of Gottesman's co-defendants.  Opinion & Order, p. 7, Exhibit G.  In making this determination, the Court went beyond the allegations in the Complaint to find coverage for claims that, heretofore, did not exist. Under the Court's hypothesis, coverage would always exist in a multi-defendant case, regardless of the allegations of the complaint.

The Court mistakenly concludes that the aforementioned Counts do not "necessarily implicate Gottesman as a knowing or responsible individual." Id. at 4.  As Szelc, incorporated by reference all of the preceding paragraphs (1-107) into all of the remaining Counts (including Counts  III, IV, V, IX and/or X ), Szelc's Complaint must be read to necessarily implicate Gottesman as a knowing or responsible individual in all respects.  See Exhibit A.  Otherwise, it would not be possible for Gottesman to cast his lot with the other defendants.  He would be blaming them in order to save himself.  He would have taken a completely different approach to the defense of this case, as he is now compelled to do, at least in part on the covered counts.

Szelc's Complaint does not contain alternative or conflicting theories of wrongdoing.  See Exhibit A.  Plainitff has a succinct and cohesive theory.  According to Szelc's Complaint (Exhibit A), all of the defendants, including Gottesman, knowingly conspired to fraudulently divest Szelc of his ownership interest in the Property by arranging for his signature to be forged on a deed thereby conveying Szelc's ownership

9

interest in his home to Parkstone without his permission or knowledge.  See Exhibit B; see also Opinion & Order, p. 4, Exhibit G.  Szelc does not allege any other theory. Consequently, if Counts I and II assert allegations, which, after juxtaposing those allegations with the terms of Gottesman's Title Policy, render Gottesman ineligible for coverage, all of the remaining Counts must also render Gottesman ineligible for coverage because the allegations in Counts I and II are incorporated by reference in the remaining causes of action.   Absent intentional conduct, Szelc has made no claim against Gottesman, and would have no hope of affecting his interest in the Property.  To the extent that such an impact might be hypothesized, Gottesman would necessarily be "covered" in the first instance by his co-defendants.

C.    Szelc specifically alleges that Gottesman acted deliberately in Counts IX and X.

The Court's finding with regard to Count IX - Unjust Enrichment, and Count X - Unconscionability deserves separate mention.  First American maintains that these two Counts belong in the same "uncovered" category as Counts XI, XII, XIV and XV.  In the absence of the intentional conduct on the part of Gottesman alleged in both of these Counts, the relief demanded in those Counts could not reach Gottesman's title to the Property.  If Szlec suffered a loss caused by Gottesman's co-defendants for this particular alleged conduct, the relief would be monetary in nature.

Moreover, Count X specifically avers that Gottesman "deliberately targeted" and "exploited" Szelc's wife.  See ¶¶ 147- 153, Exhibit A.  "Defendants . . . Gottesman . . . sought to profit from the disparity in bargaining power and deliberately targeted Plaintiff's wife."  See ¶ 147, Exhibit A (emphasis added).  Count IX repeatedly relies on the forgery scheme explained in the preceding Counts (including Count I & II) for the factual basis

for this cause of action.  See ¶¶163 -166.  Even under a very narrow interpretation of

Danek v. Hommer, super, and Keown v. West Jersey Title and Guaranty Co., super,

there can be no argument that deliberateness and exploitation equates to Gottesman

creating, allowing, assuming or agreeing to an  adverse claim that was not known or

divulged to First American.

> If Szelc succeeds against Gottesman on Counts IX or X he will necessarily have

demonstrated Gottesman's intentional bad acts.  Gottesman has done nothing to

separate himself from the pack.  Indeed, he has manifestly joined it willingly, or stayed

with it, in the defense of this matter.

> This analysis compels the conclusion that Counts IX and X cannot be covered

risks due to the very nature of their allegations.[5]  The point being that title insurance

does not cover accusations regarding the insured's behavior.   In the absence of such

conduct, Gottesman should prevail, and this very fact establishes the lack of title

insurance coverage for intentional conduct.  Stated another way, under the Court's

reasoning, Gottesman has already tossed away his best defense - blame the other guys.

The Court's coverage decision necessarily forces him to change course, at least with

regard to the Covered Claims.  The dissonance between finding such coverage,

contrasted with the allegations of the complaint and the facts of the case, becomes

glaring when one looks at Counts IX and X.

---

[5] Ultimately, this analysis leads to the conclusion that, under the Court's determination, Gottesman's defense of this case to date essentially compromises his coverage (see, e.g., §5, Exhibit E) by pursing a joint defense that is adverse to his own interests, at least with regard to the Covered Claims, if not the case overall.

D.     First American's liability is limited to Gottesman's Title Policy.

Szelc's challenges to Gottesman property interest fall outside the parameters of

Gottesman's Title Policy.  "In this State, the rule has been that a title company's liability

is limited to the policy."  Walker Rogge, Inc. v. Chelsea Title, 116 *N.J.*  517, 535 (1989)

(citations omitted).  Underlying that rule is the premise that the duty of the title company

depends on the agreement between the insurance company and the insured.  Id.  The

policy creates and limits the rights and duties of the parties.  Id. at 539 (emphasis

added).

A title insurance policy is contract of indemnity under which an insurer for

valuable consideration agrees to indemnify an insured in a specific amount against

specific losses.  Gerrold v. Penn Title Ins. Co. 271 *N.J. Super.* 50, 53 (App. Div. 1994)

(Mortgagee's failure to pay promised loan funds to mortgagor was not covered risk

under title insurance policy insuring against losses incurred by reason of "invalidity or

unenforceability of the lien of the insured mortgage.).  N.J.S.A. 17:46B-1 (a) defines "Title

Insurance" as "insuring, guaranteeing or indemnifying owners of real property or others

interested therein against loss or damage suffered by reason of liens."  A title insurance

contract insures only the title to the land securing the transaction and not the transaction

itself. 271 *N.J. Super.* at 53.  A mortgage not supported by consideration is fraudulent

and void in the hands of the lender. Id.  Divesting an insured of its interest in a property

*via* an adversary complaint claiming that the transaction was fraudulent is not a covered

risk. Id.  Just as a lender who participated in a phantom funding was ineligible for

coverage, so to is Gottesman ineligible for coverage on all counts.

"The insurer's expectation is that in exchange for [a] premium it will insure

12

against certain risks subject to the terms of the policy." 116 *N.J.* at 540. Reasonable expectation of policyholder who purchases title insurance is that he is protected against defects in his title which appear of record.  <u>Gerrold</u>, super, 271 *N.J. Super.* at 53. <u>Courts should not write a better policy of insurance for the insured than the one he purchased</u>. 116 *N.J.* at 529 (emphasis added).  Gottesman's conduct cannot expand the coverage afforded by his title policy.

Gottesman's title policy excludes any loss, costs, attorney's fees or expenses resulting from title risks that are (i) created, allowed or agreed to by the insured, and/or (ii) known by the insured but not divulged to First American.  <u>See</u> Title Policy, Exclusion 3, Exhibit E.  According to Szelc, Gottesman knowingly created, allowed and agreed to the fraud which is the spearhead of Szelc's attack on Gottesman ownership interest in the Property (Exhibit A).  First American is not obligated under Gottesman's Title Policy to provide Gottesman a defense or to indemnify him for what he did in this case.

Gottesman does not plead any defect in his insured title due to a lien or encumbrance.  He claims that Szelc's complaint, which avers that Gottesman's title was secured *via* a fraudulent transaction, triggers coverage.  There is no dispute that Szelc claims "that Gottesman was a co-conspirator and hence complicit in the forgery scheme."  Opinion & Order, p. 4, Exhibit G.  Participation in forgery scheme designed to illegally obtain title to the Property is not a covered risk.  This conduct falls outside of the terms and conditions of Gottesman's Title Policy and First American's expectations.

## V.  <u>CONCLUSION</u>

Comparing the allegations in Szelc's complaint with Gottesman's title policy leads to one determination: Gottesman is not entitled to coverage under his title policy.  The

relief granted by the Court finding coverage for the Covered Claims should be revised.
Going outside of the Complaint to hypothesize the existence of coverage creates claims
not intended by Szelc which run counter to the defense mounted by the defendants to
date.  Those claims have not been alleged because they have no reality in fact.
Gottesman's motion should be denied without exception for the Covered Claims.

                                        RUBIN, EHRLICH & BUCKLEY, P.C.


Dated:   December 17, 2009              By: /s/ Robert L. Grundlock, Jr.
                                            Robert L. Grundlock, Jr., Esq.

14