NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Richard SZELC, | : | |
| Plaintiff, | : | Civ. No. 08-4782 |
| v. | : | **OPINION** |
| David STANGER, et al., | : | |
| Defendants. | : | |
| Gabor GOTTESMAN, | : | |
| Third-Party Plaintiff, | : | |
| v. | : | |
| FIRST AMERICAN TITLE INSURANCE CO., | : | |
| Third-Party Defendant. | : | |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter comes before the Court upon Defendant/Third-Party Plaintiff Gabor Gottesman's Motion for an Order Concerning the Reimbursement of His Legal Fees and Expenses [docket # 133]. Third-Party Defendant First American Title Insurance Company ("First American") opposes the motion [141]. The Court heard oral argument on September 21, 2011. For the reasons given below, the motion is granted in part and denied in part.

II. BACKGROUND

A. The Underlying Action

The Court assumes the parties' familiarity with the underlying dispute, which involved a real estate sale-leaseback agreement entered into between Plaintiff's wife and Defendants Gabor Gottesman, David Stanger, and several companies owned by Stanger and Gottesman.[1] Plaintiff sued these Defendants as well as title agent Madison Title Agency ("Madison") and GMAC Mortgage Corporation ("GMAC")—the assignee of the new mortgage on the property—in order to unwind the transaction and regain title. Plaintiff's claims included forgery, fraud, racketeering, violations of the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA"), and failure to exercise due care. (*See generally* Second Am. Compl.) [56]. We denied summary judgment as to all Defendants based on genuine issues of material fact as to whether Plaintiff's signature was forged, whether Plaintiff knew of the forgery, whether Madison Title Agency was aware of the scheme, and whether the sale-leaseback would be best characterized as an equitable mortgage. (*See* April 18, 2011 Op. & Order 8, 10, 16.) On June 2, 2011, Plaintiff and Defendants appeared before the Court to state on the record that they had settled all claims. (June 2, 2011 Hr'g Tr. 11:21–12:3) [131]. They subsequently memorialized this settlement through a formal Consent Order, pursuant to which Plaintiff paid GMAC $141,000.00, Madison paid GMAC $45,000, Gottesman paid GMAC the remaining balance of $272,870.57, and Gottesman also provided Plaintiff with a deed transferring ownership of the property back to Plaintiff. (*See* Consent Order Ex. A, Settlement Agreement and Mutual Release.) Defendant Gottesman now seeks from his title insurer, First American, reimbursement for his attorneys' fees pursuant to the contractual duty to defend

---

[1] A fuller recitation of the facts may be found in this Court's Opinion & Order on the Motions for Summary Judgment dated April 18, 2011 [126]

contained in his title insurance policy.  (*See* Br. in Opp'n to First Mot. for Attorney Fees, Ex. A, Residential Title Insurance Policy ("Policy").)

### B. Gottesman's Insurance Policy

The Policy insures Gottesman against actual losses based on title risks, entitles him to legal defense of his "title in any court case as to that part of the case that is based on a Covered Title Risk," and provides for payment of "costs, attorneys' fees and expenses" incurred in that defense.  (*Id.*)  The Policy also contains several exceptions and exclusions.  One of the exclusions is for title risks "created, allowed, or agreed to by you [the insured]" or "that are known to you, but not to us, on the Policy Date."[2]  (*Id.*)  The Policy further states: "If you do anything to affect any right of recovery you may have, we can subtract from our liability the amount by which you reduced the value of that right."  (Br. in Opp'n Ex. A, Policy, Conditions § 6.)  Finally, the Policy states that First American is "required to repay you only for those settlement costs, attorneys' fees and expenses that we approve in advance."  (*Id.* § 5.)

### C. The Court's Finding of Duty to Defend

Early in this litigation, the Court determined that First American owed a duty to defend Gottesman against only those claims that would not require Plaintiff to prove Gottesman's knowledge of or deliberate participation in the creation of certain title risks—namely, Counts III, IV, V, IX, and X.  (*See* Nov. 30, 2009 Op. & Order 6) [71].  The Court specifically rejected both Gottesman's contention that First American should bear *all* of the defense costs and First American's contention that it should bear *none* of the defense costs.  Rather than telling the parties specifically how First American should undertake this partial defense, we left it up to the parties to work out that issue between themselves.  (*Id.* at 8.)  First American reacted by retaining separate counsel to provide a defense specifically on those claims that the Court determined were

---

[2] Gottesman's Policy Date is March 7, 2008. (Br. in Opp'n Ex. A, Policy, Schedule A.)

covered under Gottesman's Policy.  We found that First American's counsel had a conflict of interest in light of the company's incentive to show Gottesman committed fraud in order to avoid indemnifying him.  (*See* July 21, 2010 Op. & Order 4) [108].  We therefore held that First American could not control Gottesman's defense.  However, we concluded that any determination as to what portion of Gottesman's attorneys' work should be covered would be best left until the conclusion of the case, after the entry of judgment.  (*Id.* at 5.)

The parties have been unable to reach an agreement as to what portion of Gottesman's attorneys' fees First American must reimburse pursuant to its duty to defend Gottesman. Gottesman has filed a Motion for Attorneys' Fees, requesting full reimbursement of legal expenses for covered claims and one-third reimbursement for legal expenses that are not allocable to covered or non-covered claims [133].  First American opposes the motion, asserting that no legal expenses are recoverable because Gottesman failed to prove his case at trial and sacrificed his title interest by settling [141].

### III. ANALYSIS

**A.  First American's Dispute as to Specifically Covered Claims**

We have already held that First American owes Gottesman a duty to defend.  First American nonetheless argues that the claims for which we found a duty to defend are not actually covered by Gottesman's Policy.  (Br. in Opp'n 23–26.)  However, all of these arguments are squarely addressed by our previous Opinions.

First American asserts that Gottesman had the burden of proving at trial that he acted unintentionally with respect to the covered Counts, and that because there was no trial Gottesman has failed to show coverage.  (*Id.* at 24.)  However, as we have stated in our previous

Opinions, the duty to defend is based on the allegations in the complaint and not on the actual facts of the case. (*See* Feb. 11, 2010 Op. & Order 3.)  Accordingly, Gottesman's failure to prove facts at trial is immaterial.

Next, First American argues that Gottesman could not have been held liable for unjust enrichment in Count IX because he merely obtained an ownership interest in the property. (Br. in Opp'n 25.)  This argument is incorrect because if Gottesman obtained the property as a result of his knowing participation in a fraudulent conspiracy, then he would be unjustly enriched to the extent of the equity value he gained in the property. (*See* April 18, 2011 Op. & Order 12.)

Finally, First American argues that Gottesman cannot be covered against the TILA and HOEPA claims in Count III and IV, because those statutes concern lender liability and Gottesman is "only covered as an owner." (Br. in Opp'n 26.)  However, the Court's November 30, 2009 Opinion already foreclosed this argument in finding that, regardless of Gottesman's status as an owner or lender, the TILA and HOEPA claims place Gottesman's title at risk and therefore implicate First American's duty to defend. (*See* Nov. 30, 2009 Op. & Order 4.)

### B.  Effect of Gottesman's Settlement

First American asserts that, by voluntarily relinquishing title as part of the settlement, Gottesman forfeited his opportunity to demonstrate entitlement to insurance coverage for either indemnification or duty to defend. (Br. in Opp'n 9.)  This argument is unsupported by case law, the language of the insurance contract, or public policy.

As an initial matter, First American has not identified any cases finding that settlement automatically destroys an insured's right to reimbursement of defense costs.  To the contrary, New Jersey and Third Circuit cases imply that settlement does not preclude an insured's recovery of legal fees based on the insurer's duty to defend.  In *SL Industries v. American*

*Motorists Insurance Company*, the New Jersey Supreme Court remanded regarding the insurer's duty to defend an emotional injury claim that had settled. *See* 607 A.2d 1266, 1270 (N.J. 1992). In *Federal Home Loan Mortgage Corporation v. Scottsdale Insurance*, the Third Circuit affirmed the district court's holding that the insurer would need to reimburse defense costs leading up to a settlement. *See* 316 F.3d 431, 436, 446 (3d Cir. 2003). Thus, there is no absolute rule that an insured party's decision to settle forecloses its ability to seek reimbursement of defense costs.

      First American's contractual argument is primarily based on a provision in Gottesman's Policy entitled "Limitation of the Company's Liability," which states: "If you do anything to affect any right of recovery you may have, we can subtract from our liability the amount by which you reduced the value of that right." (Br. in Opp'n Ex. A, Policy, Conditions § 6.e.) However, there are at least two reasons why the word "liability" in that sentence is best read as applying solely to the "actual loss" covered by First American and not to the company's duty to defend. First, the Policy states in the same "Limitation" section: "The Policy Amount will be reduced by all payments made under this Policy – except for costs, attorneys' fees and expenses." (*Id.* § 6.c.) This language suggests that First American's "liability" for "actual loss" is distinct from attorneys' fees. Second, the cover page of the Policy separates out First American's coverage of "actual loss" and First American's "duty to defend." (*Id.* Ex. A, Policy, Owner's Coverage Statement.) This reflects that the funds paid for "actual loss" liability are distinct from the costs reimbursed for the duty to defend. Because the "Limitation" section is phrased in terms of First American's payment of "actual loss," it likely does not apply to the duty to defend. Thus, while Gottesman's decision to transfer title to Plaintiff as part of the settlement

might have resulted in a deduction from his "actual loss" coverage, the settlement does not affect Gottesman's right to seek reimbursement of defense costs.

Finally, the Court notes that there is a strong public policy in favor of settlement of legal disputes. *See State v. Williams*, 877 A.2d 1258, 1266 (N.J. 2005). This policy would be impeded if an insured were to forfeit its ability to seek reimbursement of defense costs by settling rather than proceeding to trial.

Thus, Gottesman is entitled to reimbursement of defense costs despite his participation in the settlement.

### C. Apportionment of Non-Allocable Legal Fees

The general rule is that an insurer must reimburse defense costs, provided that they can be apportioned between covered and non-covered claims. *S.L. Indus. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1280 (N.J. 1992) (collecting cases). If defense costs cannot be apportioned, the insurer must assume the cost of defending both covered and non-covered claims. *Id.* However, the New Jersey Supreme Court applies a presumption that, when parties are unable to agree upon a satisfactory apportionment, the reviewing court "will be able to analyze the allegations in the complaint in light of the coverage of the policy to arrive at a fair division of costs." *Id.*

The fees Gottesman has incurred fall into three categories: (1) legal expenses specifically allocable to covered claims; (2) legal expenses specifically allocable to non-covered claims; and (3) legal expenses not specifically allocable to either covered or non-covered claims. As noted above, the Court finds that fees allocable to covered claims should be reimbursed in full. Gottesman does not seek reimbursement for fees allocable to non-covered claims. Thus, the core of the present controversy is what percentage of non-allocable claims should be covered.

Gottesman requests an equitable allocation of one-third, or 33%, based on the ratio of covered claims to the total number of claims. (Br. in Supp. 9.) We agree, with two reservations.

First, we adjust the ratio applied to the non-allocable fees from the time of our summary judgment order onwards. Under New Jersey Law, an insurer's duty to defend continues "'until every covered claim is eliminated.'" *Sahli v. Woodbine Bd. of Educ.*, 938 A.2d 923, 930 (N.J. 2008) (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992)). The logical extension of this rule is that when specific covered claims are eliminated, those claims can no longer command a duty to defend. Our Summary Judgment Order dated April 18, 2011, terminated four claims: covered Counts V and X, and non-covered Counts I and XII. (*See* April 18, 2011 Op. & Order 24.) Accordingly, we will adjust the percentage of covered claims from that date onwards to 27% to account for the fact that there were three covered claims out of eleven total claims thereafter.

Second, we will further divide the non-allocable work based on the fact that Gottesman's attorneys represented him jointly along with other Defendants. We recognize Gottesman's position that, "given the interwoven nature of the claims in this case, the defense costs do not lend themselves to simple apportionment" because "it is impossible to segregate the work to any one particular Count of the complaint." (Br. in Supp. 133.) However, by the same logic, the non-allocable costs were generated by work performed not only for covered and non-covered claims, but also for covered and non-covered Defendants. It would be inequitable to award Gottesman a percentage of fees greater than that expended on defending his interests. The covered claims include allegations against Gottesman as well as Defendants Stanger, Parkstone Acquisition LLC ("Parkstone"), Westmarq Property Group LLC, Acqes LLC, Westmarq Financial, Westmarq Fund Management, and Madison Title Agency. (*See, e.g.*, Second Am.

Compl. ¶¶ 129, 136a, 138, 144a, 147, 149a, 164, 168.) Gottesman's law firm, Gruen & Goldstein, jointly represented all of these Defendants with the exception of Madison Title Agency. Indeed, the firm submitted its brief in support of a motion for summary judgment on behalf of "Stanger, Gottesman and Parkstone (and the other Stanger-related defendants which are defendants only nominally—Westmarq Property Group, Acqes, LLC, Westmarq, LLC, Westmarq Fund Management, LLC)." (Br. in Supp. of Mot. for Summ. J. 3) [111]. Accepting Gruen & Goldstein's representation that the other Stanger-related defendants are merely nominal, only one-third of the non-allocable work performed consisted of defending Gottesman's title interest. Therefore, we find that the most equitable allocation would be one-third of the applicable ratio of covered to non-covered claims.

### D. Adequacy of Fee Application

First American argues that Gottesman's fee application is inadequate under Fed. R. Civ. P. 54 because Gottesman has not addressed any lodestar factors. (Br. in Opp'n 11–12, 27–30.) Gottesman responds that, because the request for attorneys' fees arises under Gottesman's insurance policy, it is not subject to Rule 54. (Reply Br. 13.) Whether a contractual fee application must conform to Rule 54 is within this Court's discretion. *See Fed. Home Loan Mortg. Corp. v. Scottsdale Ins.*, 316 F.3d 431, 449 (3d Cir. 2003) (stating that "district court [may] accept a noncompliant application for fees").[3] In light of that discretion, we will not require Gottesman's fee request to conform to Rule 54.

---

[3] First American relies on *Sokoloff v. General Nutrition Companies, Inc.*, an unpublished opinion stating that, "[u]nder New Jersey law, a claim for attorneys' fees pursuant to a contractual agreement is an element of damages that must be pleaded and proved at trial." No. 00-0641, 2001 WL 536072, at *7 (D.N.J. May 21, 2001). However, *Sokoloff* is inapposite because the contract there required a finding that the claimant was a "prevailing party," whereas here the contractual duty to defend attaches regardless of Gottesman's success in defending against any claims.

### E. Amount of Legal Fees

Gottesman was represented by three firms over the course of this litigation: (1) Podvey, Meanor, et al., from October 2008 through March 2009; (2) Stahl & Zelmanovitz from March 25, 2009 through December 22, 2009, and again from January 1, 2010 through May 31, 2011; and (3) Gruen & Goldstein from March 2009 through December 2009 and from January 2010 through May 2011.  (Joseph Zelmanowitz Decl. Ex. A, Analysis of Legal Fees) [136].  From the inception of the case through May 31, 2011, Gottesman incurred attorneys' fees of $295,245.40 in total.  (Zelmanovitz Decl. ¶ 8.)  Of that amount, $5,839.89 is allocable to covered claims; $32,881.32 is allocable to non-covered claims or non-reimbursable items; and the balance of $256,524.19 is non-allocable.  (*Id.*)  Gottesman seeks the full covered amount of $5,839.89 plus one-third of the non-allocable amount—$91,347.89—for a total of $97,187.78.  (*Id.*)  Gottesman also seeks one-third of fees and costs incurred after May 31, 2011 with respect to the non-allocable work performed.

### 1. Vague

First American objects to several of Gottesman's attorneys' fee entries on the ground that they are too vague to indicate whether or not the work being billed relates to a covered claim. (Br. in Opp'n 33.)  However, as noted above, vagueness is only a concern insofar as it would prevent this Court from determining what work was performed.  Therefore, we are not moved by First American's argument that fees should be rejected solely because the listed fee entries fail to identify whether the work relates to covered or non-covered claims

### 2. Transitional

As noted above, Gottesman was represented by three different law firms over the course of this litigation. First American argues that Gottesman cannot recover fees associated with the decision to substitute counsel. (Br. in Opp'n 39.) We agree. Another judge in this district recently rejected a request for copying costs relating to the transition of files. *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 09-1724, 2011 WL 229334, at *9 (D.N.J. June 7, 2011). In the same vein, this Court will deny fee requests relating to the substitution of counsel. Accordingly we will deduct from the total recoverable amount the $148.25 and $390.00 fees that First American has marked as "Transition" relating to pro hac vice motions. (Br. in Opp'n Ex. L) [141-12].

### 3. Fee Calculations

Over the course of this litigation, Gruen & Goldstein has billed $4,389.09 in covered legal expenses, and Podvey, Meanor, et al., has billed $1,450.80 in covered legal expenses. (Zelmanowitz Decl. Ex. A, Analysis of Legal Fees). The total amount of covered expenses is $5,839.89, which is fully reimbursable.

From the time of this Court's summary judgment order onwards, Stahl & Zelmanowitz billed $6,412.50 (Zelmanowitz Decl. Ex. C) [136-2 at 59–61], in non-allocable legal expenses, (*see* Zelmanowitz Decl. Ex. A, Analysis of Legal Fees). Applying the ratio of three covered claims to eleven non-covered claims leads to a covered $1,748.86, which, after dividing by three based on counsel's joint representation of other Defendants, produces a reimbursable amount of $582.95.

From the time of this Court's summary judgment order onwards, Gruen & Goldstein billed $2887.50, of which $157.50 was not covered, (Zelmanowitz Decl. Ex. C) [136-2 at 62]

-12-

and the remainder—$2730—was non-allocable, (*see* Zelmanowitz Decl. Ex. A, Analysis of Legal Fees).  Applying the 3:11 ratio leads to a covered $744.54, which, divided by three, produces a reimbursable amount of $248.18.

Prior to the Court's summary judgment order, Stahl & Zelmanowitz billed $48,030.51 in non-allocable legal expenses.  Applying the 1:3 ratio leads to a covered $16,010.17, one-third of which is $5,336.72.

Prior to the Court's summary judgment order, Gruen & Goldstein billed $155,704.71 in non-allocable legal expenses.  Applying the 1:3 ratio leads to a covered $51,901.57, one-third of which is $17,300.52.

Prior to the Court's summary judgment order, Podvey, Meanor, et al., billed $43,646.39 in non-allocable expenses.  Applying the 1:3 ratio leads to a covered $14,548.79, one-third of which is $4,849.59.

As to the attorneys' fees incurred after May 31, 2011, the Court notes that Gottesman has not submitted any documentation relevant to that time period and therefore is not presently entitled to reimbursement of those fees.

From the subtotal of $34,157.85, the Court deducts the transitional expenses of $538.25,

In light of these calculations, the total reimbursable amount is $33,619.60.

IV. CONCLUSION

For the reasons stated above, and for good cause shown, Gottesman's Motion for an Order Concerning the Reimbursement of His Legal Fees and Expenses [docket # 133] is granted in part and denied in part, and Gottesman is entitled to collect from First American a total of $33,619.60.  An appropriate order will follow

    /s/  Anne E. Thompson          
ANNE E. THOMPSON, U.S.D.J.

Dated  November 21, 2011